Argued and submitted January 25, 1999, affirmed on appeal and cross-appeal
May 3, 2000

Pete C. BROWN,
*Respondent - Cross-Appellant,*

*v.*

AMERICAN PROPERTY MANAGEMENT CORP.,
an Oregon corporation,
*Appellant - Cross-Respondent.*

(9509-06283; CA A95659)

1 P3d 1051

Thomas M. Christ argued the cause for appellant - cross-respondent. With him on the briefs were Scott J. Meyer and Mitchell, Lang & Smith.

Paul L. Breed argued the cause for respondent - cross-appellant. With him on the briefs were Thomas F. Spaulding and Spaulding Cox & Schaeffer, LLP. On the cross-reply brief was Paul L. Breed.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Brewer, Judge.*

LANDAU, P. J.

---

\* Brewer, J., *vice* Rossman, S. J.

## LANDAU, P. J.

Plaintiff worked as a leasing agent for defendant, a commercial property management company. He was to be paid in accordance with a written commission agreement with defendant, which provided for payment on the basis of lease income for office space that he successfully leased. Plaintiff and defendant disagreed about the amount of commissions plaintiff rightfully could claim under the agreement. The parties mutually agreed that plaintiff should cease working while they negotiated the resolution of the dispute over commissions. Plaintiff later changed his mind, however, and demanded to return to work. When defendant refused to permit plaintiff to return to work, plaintiff initiated this action for unlawful termination of employment, breach of contract, and fraud.

The trial court entered summary judgment in favor of plaintiff on the unlawful termination claim and on a portion of the breach of contract claim. The balance of the case was sent to a jury, which returned a verdict in favor of plaintiff. The trial court entered judgment for plaintiff and awarded plaintiff his attorney fees, although not in the full amount requested. Defendant appeals, seeking reversal of the judgment and a remand for a new trial. Plaintiff cross-appeals, assigning error to the trial court's failure to award attorney fees in the full amount requested. We affirm on the appeal and on the cross-appeal.

Defendant advances a number of assignments of error in its appeal. We write to address only four of them and affirm the others without further discussion. Because the four assignments that we do address implicate different standards of review, we address each one separately, stating those facts necessary to the disposition of the assignment.

We begin with defendant's argument that the trial court erred in entering summary judgment on the unlawful termination claim. We may affirm the entry of summary judgment only if, taking all reasonable inferences in favor of the nonmoving party, we can say that there are no genuine

issues of material fact and that plaintiff is entitled to judgment as a matter of law. *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997).

Evidence in the summary judgment record, including affidavits that defendant supplied in opposition to plaintiff's motion, permits the following version of the sequence of events. On July 5, 1995, plaintiff delivered a letter to his supervisor, Keith Vernon, complaining that defendant had not paid him for several leases that he had negotiated. The letter stated that plaintiff had retained a lawyer who had advised him that his claims for commissions were well-founded. Plaintiff met with Vernon and another individual, Rhonda Tschida, on July 24. Plaintiff and Vernon agreed that plaintiff should not continue working until the compensation dispute had been resolved. Vernon sent a letter to plaintiff confirming that plaintiff had agreed voluntarily to leave work until the commission dispute had been resolved.

On July 31, plaintiff attempted to return to work. Vernon was away from the office on vacation, but Tschida was there, and she told plaintiff that he could not work in the office. She sent a letter to plaintiff confirming that "you are on administrative leave status until such time as the compensation issue is resolved." A week later, Vernon sent a letter to plaintiff's attorney stating that plaintiff could not return to work until the compensation dispute had been resolved. A month later, plaintiff initiated this action, alleging, among other things, that defendant had terminated him for making a wage claim in violation of ORS 652.355, which provides that:

> "No employer shall discharge or in any other manner discriminate against any employee because * * * [t]he employee has made a wage claim or discussed, inquired about or consulted an attorney or agency about a wage claim."

Plaintiff moved for summary judgment on the claim, and the trial court allowed the motion.

On appeal, defendant argues that there was at least a genuine issue of material fact as to whether plaintiff had been terminated because he had expressed an intention to

file a wage claim. Defendant argues that the evidence, taken in the most favorable light, shows that it did not unilaterally terminate plaintiff, but rather that plaintiff and defendant mutually agreed that plaintiff should be on administrative leave during the pendency of the dispute. Plaintiff argues that he did not actually agree to go on administrative leave and that defendant's evidence to the contrary should not be believed. In the alternative, plaintiff argues that his agreement to go on administrative leave was unenforceable, because, among other things, the agreement lacked consideration. Defendant replies that, even if the agreement were unenforceable, it did not suspend plaintiff *because of* his threatened wage claim, but rather because of its concern that plaintiff not continue to generate work that would lead to further disputes.

■     Plaintiff's argument that he never agreed to the administrative leave may be disposed of quickly. Plaintiff did offer affidavit testimony that he did not agree to the administrative leave and that he told Vernon so. The problem is that defendant offered affidavits to the contrary. Which version of the events is the correct one is not appropriately resolved on summary judgment. ORCP 47 C.

Plaintiff's argument that the mutual agreement of suspension was unenforceable may not so easily be avoided. Defendant, in fact, offers no response to plaintiff's contention that the agreement to suspend employment was not supported by consideration. Without consideration, defendant was in no position to insist on performance. That means that, as of July 31, when defendant refused plaintiff's request to return to work, defendant, in effect, unilaterally suspended plaintiff. The only question, therefore, is whether defendant suspended plaintiff in violation of ORS 652.355.

■     That statute provides that an employer may not "discharge or in any other manner discriminate against any employee *because*" of the fact that the employee has either filed a wage claim or has discussed the possibility of filing a wage claim. ORS 652.355 (emphasis added). Defendant argues that, in light of Vernon's testimony that plaintiff was suspended not in retaliation but to avoid future liability,

there is at least a genuine issue of material fact as to its motivation in suspending plaintiff. The statute does not draw the distinction on which defendant seeks to rely, however. It does not prohibit discharge or discrimination only when motivated by a desire to retaliate for the filing of a wage claim. It prohibits discharge or discrimination "because of" the filing of a wage claim, whether an employer's concern is for retaliation or for avoidance of future damages. We therefore conclude that, even viewing the facts in the light most favorable to defendant, there was no genuine issue of material fact as to whether defendant suspended plaintiff because of his possible wage claim and that the trial court did not err in granting plaintiff summary judgment on the claim for unlawful termination in violation of ORS 652.355.

■      After allowing plaintiff's summary judgment motion on the unlawful termination claim, the trial court sent the claim to the jury for a determination of damages, including noneconomic damages. Defendant objected that, although ORS 652.355 provides for an award of "actual damages," such damages do not include noneconomic loss. The trial court overruled defendant's objection and allowed the jury to determine the amount of plaintiff's noneconomic loss. The jury ultimately awarded damages, including $11,500 for noneconomic loss. On appeal, defendant assigns error to the trial court's decision to permit the jury to award those damages. It argues that, because the statute refers to "actual" damages, only pecuniary loss is recoverable.

ORS 652.355(2) provides, in part:

> "Any person who discharges or discriminates against an employee in violation of [ORS 652.355(1)] shall be liable to the employee discharged or discriminated against for actual damages or $200, whichever is greater."

The statute does not define "actual damages." We note that, in other statutes, the legislature sometimes uses the term "actual damages" to include noneconomic damages, *see, e.g.,* ORS 97.760 ("actual damages" includes damages for emotional distress), and sometimes it says nothing one way or the other, *see, e.g.,* ORS 659.160(1) ("actual damages" for employment discrimination). Thus, defendant's argument that the

qualifier "actual" must mean only "pecuniary" cannot be sustained. Sometimes "actual" damages is intended to include only pecuniary harm, sometimes not. The question remains whether the legislature intended the term to include only noneconomic harm in this case. Neither party has referred to any evidence in the enactment history of ORS 652.355 that sheds any light on the legislature's intentions, and we are aware of none.

In *Brewer v. Erwin*, 287 Or 435, 600 P2d 398 (1979), the Supreme Court held that, when "statutory indications are lacking" as to whether the term "actual damages" is intended to encompass noneconomic loss, the inquiry is whether the award of noneconomic damages is inconsistent with the general purpose of the statute:

> "The act may be designed to allow recovery of such damages as are appropriate to an injury to the specific interests which compliance with the statutory provisions is designed to protect. When the provision is designed to protect a party specifically against financial loss, that loss would be the appropriate measure of damages. In short, when other statutory indications are lacking, the key to damages seems to be to determine what kind of harm * * * can reasonably be said to lie within the contemplation of the protective provision of the act upon which the claim is founded."

*Id.* at 445.

In this case, the statute prohibits either termination or discrimination because an employee has made or is considering making a wage claim. Emotional distress is a common consequence of termination or discrimination in employment, and either may form the basis of a common-law claim for emotional distress. *See, e.g., Madani v. Kendall Ford, Inc.*, 312 Or 198, 205, 818 P2d 930 (1991) ("An employee who has been discharged can state a claim for intentional infliction of emotional distress if the employer committed abusive acts in the course of the firing."); *Franklin v. PCC*, 100 Or App 465, 469-70, 787 P2d 489 (1990) (discrimination in employment may form the basis for a claim for intentional infliction of emotional distress); *Palmer v. Bi-Mart Company*, 92 Or App 470, 472, 758 P2d 888 (1988) (same). We see no reason why it cannot reasonably be said that the recovery of noneconomic

damages was within the contemplation of the legislature in enacting ORS 652.355(2). We therefore conclude that the trial court did not err in overruling defendant's objection and in allowing the jury to award noneconomic damages under ORS 652.355(2).

We turn to plaintiff's breach of contract claims. Plaintiff alleged that defendant failed to pay commissions on lease transactions with various tenants, including Shaffer & Nelson and Hollywood Legal Services. The trial court entered summary judgment in favor of plaintiff on the Shaffer & Nelson claim. The Hollywood Legal Services claim was submitted to the jury, which found in favor of plaintiff. On appeal, defendant argues that the trial court erred in granting summary judgment as to the former and further erred in failing to enter a directed verdict in defendant's favor as to the latter.

■ We begin with the Shaffer & Nelson claim. Once again, in reviewing the trial court's decision, we take the facts in the light most favorable to defendant to determine whether there is a genuine issue of material fact and whether plaintiff was entitled to judgment as a matter of law. ORCP 47 C.

It is undisputed that the agreement between plaintiff and defendant provided that:

"If a current tenant transfers or takes on additional space equal to 20% or more of their original space *and* extends the term of their current lease for 24 months or longer, then the additional rental income generated from the extension of the current lease is treated as a co-op transaction and the lease extension portion will be based on one half of the additional rental income generated. The additional space will be based on the same term as a new lease."

(Emphasis in original.) Shaffer & Nelson was an existing tenant of defendant's. It was considering relocating, but plaintiff persuaded it to move to smaller quarters in another building that defendant managed. Plaintiff also persuaded it to enter into a new five-year lease.

Plaintiff claimed a commission on the transaction, arguing that he negotiated a transfer and an extension in

excess of 24 months. Defendant argued that no commission was owed, because the agreement applies only when an existing tenant leases at least 20 percent more space. Plaintiff moved for, and obtained, summary judgment on his claim.

On appeal, defendant argues that allowing summary judgment on the Shaffer & Nelson claim was error because the commission agreement is at least ambiguous on the question whether tenant transfers generate commissions without an increase in leased space. Plaintiff argues that the language of the commission agreement is capable of only one reasonable construction.

A dispute over the meaning of a contract may be disposed of by way of summary judgment only if its terms are unambiguous. *Biomass One, L.P. v. S-P Construction (A68622)*, 120 Or App 194, 200, 852 P2d 847 (1993). Whether a contract provision is ambiguous is a question of law. *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997). An ambiguity is presented only when the language of the agreement is reasonably capable of more than one interpretation. *Thomas Creek Lumber & Log Co. v. State Forester*, 157 Or App 204, 212, 970 P2d 659 (1998), *rev den* 328 Or 366 (1999) (ambiguity exists if disputed terms lend themselves to more than one reasonable interpretation).

In this case, the language of the agreement does not support the interpretation that defendant suggests. It provides for commissions either "[i]f a current tenant transfers or takes on additional space equal to 20% or more of their existing space." Thus, a commission is generated if one of two events occurs: (1) if a current tenant transfers or (2) if the current tenant takes on additional space equal to 20 percent or more of their existing space. The agreement simply does not say that a commission is generated only if a current tenant transfers *to space equal to 20 percent or more of its existing space.* To read the contract as defendant suggests would require us to insert that qualifying language after "if a current tenant transfers." We may neither add to nor take from contract language in determining its meaning. ORS 42.230 (in construing a document, the court is "to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been

inserted"); *Johnson v. Campbell*, 259 Or 444, 447, 487 P2d 69 (1971) (court may not adopt construction that is inconsistent with express terms of contract). We conclude that the trial court did not err in entering summary judgment for plaintiff on the Shaffer & Nelson claim.

That leaves the Hollywood Legal Services claim. We review the facts in the light most favorable to plaintiff and may reverse the trial court's denial of defendant's directed verdict motion as to that claim only if the record at trial reveals a complete lack of evidence on one or more elements of the claim. *Seidel v. Time Ins. Co.*, 157 Or App 556, 561, 970 P2d 255 (1998).

Hollywood Legal Services (Hollywood) also was an existing tenant. Plaintiff negotiated with Hollywood, which wanted more space and an extension of the lease term from two to four years. The negotiations resulted in an executed letter of intent calling for both an expansion and an extension of 37 months. The letter of intent was submitted to defendant for approval, but defendant failed to approve the transaction. Reid, a representative of Hollywood, became frustrated by the delays and complained directly to defendant's owner, Weston. The parties arranged a meeting. After the meeting, Reid overheard Weston complain to a coworker, "Why should we pay [plaintiff] when we've done all the work?" Defendant thereafter approved the lease, but without the extended lease period. The effect of the refusal to approve the extension was a drastic reduction in the commission to which plaintiff would have been entitled.

Plaintiff claimed that defendant acted in bad faith in refusing to approve the transaction as he had negotiated it with Hollywood and that it eliminated the lease extension to deprive him of earned commission. In moving for a directed verdict, defendant argued that it had the authority under the contract to reject lease proposals and that there was no evidence of bad faith. The trial court denied the motion, and the jury returned a verdict for plaintiff.

On appeal, defendant argues that plaintiff was not entitled to any commissions for deals that it did not approve. Plaintiff argues that, although defendant had authority to reject proposed lease agreements, it was obligated to do so in

good faith. Defendant rejoins that the obligation of good faith does not apply when it has the sole authority to reject leases submitted to it and that, in any event, there is no evidence of bad faith.

We reject both of defendant's contentions. First, the law imposes a duty of good faith and fair dealing with respect to all contracts

"to facilitate performance and enforcement of the contract where it is consistent with and in furtherance of the agreed-upon terms of the contract or where it effectuates 'the reasonable contractual expectations of the parties.' "

*Sheets v. Knight*, 308 Or 220, 233, 779 P2d 1000 (1989). It is settled that, even in cases in which contractual obligations are conditioned on personal satisfaction, the right to disapprove must be exercised in good faith. *Martin v. Dillon*, 56 Or App 734, 738, 642 P2d 1209, *rev den* 293 Or 340 (1982). Second, upon our review of the record, we conclude that there is evidence—in particular Weston's comment that he did not want to have to pay plaintiff any commissions on the transaction—from which a jury could have concluded that defendant exercised its authority to reject the Hollywood lease extension in bad faith and only to deprive plaintiff of his commission. We therefore conclude that the trial court did not err in denying defendant's directed verdict motion as to the Hollywood Legal Services claim.

We turn to plaintiff's cross-appeal. Plaintiff complains about the amount of attorney fees that the trial court awarded. We affirm the trial court's decision without further discussion.

Affirmed on appeal and cross-appeal.