Mamdouh EL–HAKEM, Plaintiff,

v.

BJY INC., a foreign corporation, and Gregg Young, an individual, Defendants.

No. CV 01–663–BR.

United States District Court, D. Oregon.

March 19, 2003.

Craig A. Crispin, Patty T. Rissberger, Crispin & Associates, Portland, OR, for Plaintiff.

Krishna Balasubramani, Sather Byerly & Holloway, LLP, Portland, James D. Pierce, Houston, TX, for Defendants.

## OPINION AND ORDER

BROWN, District Judge.

This matter comes before the Court on Defendant Gregg Young's Motion for Judgment as a Matter of Law and Alternatively a New Trial (# 115) and Plaintiff Mamdouh El–Hakem's Motion for Judgment as a Matter of Law and to Amend Judgment or Alternatively for New Trial (# 117).[1]

For the reasons that follow, the Court **DENIES** Defendant Young's Motion. The Court also **GRANTS in part** that portion of Plaintiff's Motion in which Plaintiff seeks an amended judgment against Defendant BJY, Inc., for its vicarious liability under Title VII for the $15,000 compensatory damages and $15,000 punitive damages awarded to Plaintiff on his § 1981 claim against Young. The Court **DENIES** the remainder of Plaintiff's Motion.

## *BACKGROUND*

Plaintiff, an Arab male of Egyptian origin, worked for BJY as a structural-plans examiner in Portland, Oregon, from approximately October 7, 1998, through April 7, 2000. Young is the Chief Executive Officer of BJY. During Plaintiff's employment, Young repeatedly addressed Plaintiff, over Plaintiff's objection, by the non-Arabic, "Western" name of "Manny." According to Plaintiff, Young's purpose for this practice was "to make it easier" for BJY's clients to interact with employees who did not have Western-sounding names. Although Young also selected Western names for other BJY employees throughout the country, only Plaintiff objected. Even after Plaintiff complained numerous times, Young persisted in using the name "Manny" to address Plaintiff in e-mails and in telephone conferences instead of using Plaintiff's given Arabic name, "Mamdouh."

Plaintiff worked under the supervision of a licensed structural-plans examiner. After the licensed examiner left the Portland office, however, Plaintiff, who was not licensed, was the only employee working there. Ultimately, BJY closed the Portland office in spring 2000. Before then, Plaintiff complained internally and to Oregon authorities that BJY was not compensating him properly under minimum- and overtime-wage laws. Plaintiff's employment ended shortly thereafter.

Plaintiff brought this action against both BJY and Young individually for employment discrimination, wrongful termination, and unpaid wages pursuant to 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201; and Oregon state law. The Pretrial Order included five claims for hostile work-environment discrimination based on race or religion; three claims for unlawful termination based on race, religion, or retaliation; and five claims for wage-law violations.

After a five-day trial, the jury answered specific interrogatories as to each Defendant. After the Court read the Verdicts to the parties, the Court asked whether the parties had any further inquiry for the

---

1. BJY, Inc., did not file any post-trial motions, but it joined Young in opposing Plaintiff's Motion, including that part in which Plaintiff seeks judgment as a matter of law against BJY. Also pending are Plaintiff's Motion for

Attorney Fees and Costs (# 120, # 126) and BJY's Bill of Costs (# 116). The Court will take these Motions under advisement on this date and will resolve these matters consistent with this Opinion and Order.

jury before the Court received the Verdicts and discharged the jury. The parties did not have any further inquiries and did not object to the Court receiving the Verdicts.

The jury found Young intentionally discriminated against Plaintiff by creating or maintaining a hostile work environment on the basis of Plaintiff's race in violation of § 1981. The jury awarded Plaintiff $15,000 in compensatory damages and $15,000 in punitive damages on this claim. In addition, the jury found BJY failed to pay Plaintiff regular wages in violation of Or.Rev.Stat. § 652.140, *et seq.*, in the amount of $11,051.64 due and owing to Plaintiff at the time his employment ended.

In all other respects, the jury found in favor of Defendants. For example, the jury found BJY did not discriminate against Plaintiff by creating a hostile work environment on the basis of Plaintiff's race or religion. In addition, although the jury concluded BJY terminated Plaintiff's employment, the jury also found Plaintiff's race or religion was not a factor in that decision. Moreover, the jury found BJY would have made the same decision even though the jury also found Plaintiff's complaint that BJY owed him unpaid wages was a substantial motivating factor in terminating Plaintiff. Finally, the jury found Plaintiff was an exempt employee and, therefore, was not entitled to overtime wages.

Accordingly, the Court entered judgment against Young in the sum of $15,000 compensatory damages and $15,000 punitive damages. The Court also entered judgment against BJY for unpaid regular wages of $11,051.64 and penalties of $6,691.20.

Young now moves for judgment in his favor as a matter of law. He asserts he cannot be held liable for race discrimination in violation of § 1981 because (1) his conduct was not "racially based," (2) there was no racially-hostile work environment, and (3) his conduct did not affect Plaintiff's right to make and to enforce his employment contract with BJY. Young also contends the jury's separate Verdicts are inconsistent, and, therefore, he moves for a new trial.

Plaintiff also moves for judgment as a matter of law. As noted, Plaintiff prevailed on his § 1981 race discrimination hostile work-environment claim as to Young. Plaintiff asserts, however, he also is entitled to judgment against BJY for the same amount of damages the jury awarded Plaintiff against Young on the § 1981 claim. Even if the jury correctly found BJY was not directly liable to Plaintiff under § 1981, Plaintiff asserts BJY is vicariously liable for these damages pursuant to Title VII.

In addition, Plaintiff seeks judgment as a matter of law on his claim for unpaid overtime and a new trial on the issue of the number of overtime hours he worked. Plaintiff maintains the evidence was insufficient to support either the professional or administrative exemption for payment of overtime wages found by the jury. Plaintiff also seeks judgment as a matter of law on his state law wage-retaliation claim because the "same decision" defense found by the jury does not apply to this claim. Finally, Plaintiff seeks judgment as a matter of law or, in the alternative, a new trial on his retaliation claim under the FLSA against Young because the jury failed to resolve that claim due to "what appears to be a typographical error in the verdict form."

### STANDARDS

Special jury verdicts are governed by Fed.R.Civ.P. 49, which provides in part:

(a) **Special Verdicts.** The court may require a jury to return only a special

verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives the right to a trial by jury of the issue so omitted unless before the jury retires the party demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.

A motion for judgment as a matter of law is governed by Fed.R.Civ.P. 50, which provides in part:

**(b) Renewing Motion for Judgment After Trial;** Alternative Motion for New Trial. If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment—and may alternatively request a new trial or join a motion for a new trial under Rule 59. In ruling on a renewed motion, the court may:

(1) if a verdict was returned:

(A) allow the judgment to stand,

(B) order a new trial, or

(C) direct entry of judgment as a matter of law; or

(2) if no verdict was returned;

(A) order a new trial, or

(B) direct entry of judgment as a matter of law.

**(c) Granting Renewed Motion for Judgment as a Matter of Law; Conditional Rulings; New Trial Motion.**

(1) If the renewed motion for judgment as a matter of law is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for the new trial. If the motion for a new trial is thus conditionally granted, the order thereon does not affect the finality of the judgment. In case the motion for a new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court has otherwise ordered. In case the motion for a new trial has been conditionally denied, the appellee on appeal may assert error in that denial; and if the judgment is reversed on appeal, subsequent proceedings shall be in accordance with the order of the appellate court.

A motion for new trial is governed by Fed.R.Civ.P. 59(a), which provides in part:

**(a) Grounds.** A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States;

. . . .

■ The court may grant judgment as a matter of law contrary to a jury's

verdict if the evidence viewed in the light most favorable to the nonmoving party is insufficient to support the verdict:

> Judgment as a matter of law is proper if the evidence, construed in the light most favorable to the non-moving party, allows only one reasonable conclusion and that conclusion is contrary to that reached by the jury.

*Mockler v. Multnomah County,* 140 F.3d 808, 815 n. 8 (9th Cir.1998) (internal quotations omitted). The jury's verdict must be affirmed if it is supported by substantial evidence. *Id.* "Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." *Gilbrook v. City of Westminster,* 177 F.3d 839, 856 (9th Cir.1999)(internal quotations and citations omitted). The court also may grant judgment as a matter of law and, alternatively, a new trial when the court's instructions to the jury were legally insufficient. If a party does not raise an objection to the legal sufficiency of the court's proposed jury instructions before the jury is instructed, however, any objection is waived. *Passantino v. Johnson & Johnson Consumer Prods., Inc.,* 212 F.3d 493, 512 (9th Cir.2000). *See also* Fed.R.Civ.P. 51. In addition, a party may waive such an objection by failing to request a specific instruction on the particular issue. *E.E.O.C. v. Pape Lift, Inc.,* 115 F.3d 676, 683 (9th Cir.1997).

Finally, the court may grant a new trial if a jury's verdict contains irreconcilable inconsistencies:

> It is certainly true that ... [when] a jury answers special interrogatories and the answers cannot be reconciled, a new trial must be granted. But it is also true that we do not find inconsistency lightly. Rather:
> We are bound to find the special verdicts consistent if we can do so under a

fair reading of them. When faced with a claim that verdicts are inconsistent, the court must search for a reasonable way to read the verdicts as expressing a coherent view of the case, and must exhaust this effort before it is free to disregard the jury's verdict and remand the case for a new trial.

*Norris v. Sysco Corp.,* 191 F.3d 1043, 1048 (9th Cir.1999), *cert. denied,* 528 U.S. 1182, 120 S.Ct. 1221, 145 L.Ed.2d 1121 (2000)(internal quotations and citations omitted). When the court invites the parties to consider whether to discharge the jury after the jury has reported its verdict, however, a party must raise any issue concerning possible inconsistencies in the jury's findings before the jury is excused or risk waiver of the objection. *Home Indem. Co. v. Lane Powell Moss and Miller,* 43 F.3d 1322, 1331 (9th Cir.1995).

## *DISCUSSION*

**I. Plaintiff is entitled to judgment against both Young and BJY on Plaintiff's race-based hostile work-environment claim.**

**A. Substantial evidence exists to support the jury's Verdict against Young on Plaintiff's § 1981 hostile work-environment claim.**

The Court submitted to the jury Plaintiff's § 1981 race-discrimination claims against both BJY and Young. As noted, Plaintiff alleged both BJY and Young violated § 1981 by creating a racially-hostile work environment and/or by terminating Plaintiff's employment because of his race. Although Plaintiff's race-discrimination claims against Young arose only under § 1981, Plaintiff's race-discrimination claims against BJY arose under both § 1981 and Title VII and involved identical factual issues. In addition, Plaintiff's separate Title VII hostile work-environment and unlawful-termination claims for dis-

crimination based on Plaintiff's religion applied only to BJY. It was necessary, therefore, to make clear to the jury that (1) Plaintiff's Title VII claims, including the discrimination claims based on religion, did not apply to Young and (2) the same factual issues necessary to resolve Plaintiff's § 1981 claims against BJY also would resolve Plaintiff's Title VII race-based claims against BJY. Accordingly, pursuant to Rule 49(a), the Court used two forms of verdict, one for each Defendant. The Court also directed the jury to answer specific questions tailored to Plaintiff's multiple theories of discrimination.

The jury responded as follows to the Court's interrogatories concerning Plaintiff's claims of race-based hostile work environment and wrongful termination under § 1981 against Young:

### Part I. Hostile Work Environment Discrimination Claim

1A. Has Plaintiff proved by a preponderance of the evidence that Defendant Young intentionally discriminated against Plaintiff by creating or maintaining a hostile work environment on the basis of Plaintiff's race?

Yes X No 

If your answer is "No," proceed to Part 2. If your answer is "Yes," proceed to Question 1B.

1B. What are Plaintiff's damages, if any, for intentional hostile work environment discrimination by Defendant Young?

For emotional distress: $15,000
For punitive damages: $15,000

In Part II of Young's verdict form, the jury responded "No" to the question whether Plaintiff proved Young intentionally caused BJY to terminate Plaintiff's employment. Plaintiff, therefore, prevailed on his § 1981 race discrimination claim against Young only on the hostile work-environment theory.

Young now moves for judgment as a matter of law (and, alternatively, for a new trial) on Plaintiff's § 1981 claim based on a hostile work environment. Young asserts the evidence was insufficient to support any finding that (1) his conduct was racially based, (2) his conduct created a hostile work environment, or (3) his conduct affected Plaintiff's right to make and to enforce his employment contract with BJY. Young made these same arguments at trial.

Viewing the evidence in the light most favorable to Plaintiff, the Court remains convinced rational jurors could find Young's conduct was based on Plaintiff's status as an Arab. The Supreme Court has identified "targets of race discrimination for purposes of Section 1981 include groups that today are considered merely different ethnic or national groups, such as Arabs, Jews, Germans and Italians." *Benigni v. City of Hemet*, 879 F.2d 473, 477–78 (9th Cir.1988), *reh'g denied*, 882 F.2d 356 (1989)(citing *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609–12, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987)). *See also Pavon v. Swift Transp. Co., Inc.*, 192 F.3d 902, 908 (9th Cir.1999). When Young persistently addressed Plaintiff, over his objection, by a Western, non-Arabic name rather than Plaintiff's Arabic name in order "to make it easier" for customers of BJY to deal with Plaintiff, Young engaged in conduct that was racial in nature.

The Court also remains satisfied rational jurors could find Young's intentional conduct created a hostile work environment because his conduct was sufficiently pervasive to alter the conditions of Plaintiff's employment and to create a work environment racially hostile to a reasonable Arab. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). *See also Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir.2000); *Ellison v.*

*Brady,* 924 F.2d 872, 879–80 (9th Cir.1991). Young's argument that he never met Plaintiff in person is beside the point. Moreover, the evidence, viewed in the light most favorable to Plaintiff, does not support Young's contention that he only occasionally addressed Plaintiff as "Manny." In fact, the jury heard evidence that Young stubbornly continued to engage in this conduct over Plaintiff's repeated objections.

 Young also contends he is entitled to judgment as a matter of law because he cannot be individually liable under § 1981 without privity of contract with Plaintiff. As the Third Circuit noted in its decision in *Al–Khazraji v. Saint Francis College,* however, an officer of a corporation who intentionally infringes on an individual's rights protected under § 1981 is personally liable:

> In particular, directors, officers, and employees of a corporation may become personally liable when they intentionally cause an infringement of rights protected by Section 1981, regardless of whether the corporation may also be held liable. If individuals are personally involved in the discrimination ... and if they intentionally caused the ... [infringement of] Section 1981 rights, or if they authorized, directed, or participated in the alleged discriminatory conduct, they may be held liable.

784 F.2d 505, 518 (3d Cir.1986), *aff'd on other grounds,* 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987) (citations omitted).

In summary, Young has not offered any persuasive arguments to set aside the jury's specific finding that he discriminated against Plaintiff based on Plaintiff's race in violation of § 1981. The Court, therefore, denies Young's Motion for Judgment as a Matter of Law.

**B. The Court erred when it did not instruct the jury that BJY would be vicariously liable to Plaintiff if the jury found against Young on Plaintiff's § 1981 race discrimination claim.**

Although the jury specifically found Young intentionally discriminated against Plaintiff by creating a racially-hostile work environment, the jury answered "No" when asked: "Has Plaintiff proved by a preponderance of the evidence that Defendant BJY, Inc., discriminated against Plaintiff by creating or maintaining a hostile work environment on the basis of Plaintiff's race or religion?"

 Young moves alternatively for a new trial. Young asserts the jury's Verdict holding him liable for race-discrimination is inconsistent with the Verdict in which the jury found BJY did not discriminate against him on the basis of race. Young argues the solution to this inconsistency is to vacate the judgment against him. Neither Young nor BJY, however, objected to the Court receiving the Verdicts before the jury was discharged even though the Court gave the parties an opportunity to do so. Young and BJY, therefore, waived any objection they may have had based on inconsistency of the Verdicts. *See Home Indem. Co. v. Lane Powell Moss and Miller,* 43 F.3d at 1331.

 Conversely, in Plaintiff's Motion for Judgment as a Matter of Law and to Amend Judgment or Alternatively for New Trial, Plaintiff contends this same inconsistency warrants entry of judgment against BJY based on its vicarious liability pursuant to Title VII for the damages awarded Plaintiff on his § 1981 hostile work-environment claim against Young. Plaintiff emphasizes the only evidence at trial was that Young was acting within the course and scope of his employment with BJY. The Court agrees. Moreover, Plaintiff re-

quested an instruction to that effect before the Court submitted the case to the jury, but the Court only instructed the jury generally concerning vicarious liability:

> Under the law, a corporation is considered to be a person. It can act only through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

Although the jury could have found BJY liable for Young's conduct pursuant to this instruction, the Court did not explicitly direct the jury that it must find against BJY if it found Young liable on either of Plaintiff's § 1981 claims. Accordingly, although Plaintiff did not object to the Court receiving the Verdicts before the Court discharged the jury, the Court finds such an objection was unnecessary to preserve the issue. *See Hammer v. Gross*, 932 F.2d 842, 847 (9th Cir.), *cert. denied*, 502 U.S. 980, 112 S.Ct. 582, 116 L.Ed.2d 607 (1991). *See also Smith v. Tow Boat Serv. & Mgmt., Inc.*, 66 F.3d 336 (9th Cir.1995).

■■■ When a post-trial motion is based on an alleged inconsistency in verdicts, the court first must determine whether the verdicts are, in fact, inconsistent:

> When faced with a claim that verdicts are inconsistent, the court must search for a reasonable way to read the verdicts as expressing a coherent view of the case, and must exhaust this effort before it is free to disregard the jury's verdict and remand the case for a new trial. The consistency of the jury verdicts must be considered in light of the judge's instructions to the jury.

*Toner v. Lederle Labs.*, 828 F.2d 510, 512 (9th Cir.1987) (citation omitted). The Seventh Amendment "right to a jury trial requires validation of verdicts if at all possible." *Pierce v. S. Pac. Transp. Co.*, 823 F.2d 1366, 1370 (9th Cir.1987) (citations omitted).

■■■ The question is whether the jury's finding that Young discriminated against Plaintiff by creating a hostile work environment because of Plaintiff's race is inconsistent with the jury's answer in favor of BJY on Plaintiff's § 1981 hostile work-environment claim. That question turns on whether Plaintiff's § 1981 claim against Young was subject to the same elements and proof as Plaintiff's race-based Title VII and § 1981 hostile work-environment claims against BJY and whether, in any event, BJY is vicariously liable pursuant to Title VII for Young's conduct in violation of § 1981.

During trial and up to the time of instructing the jury, the Court and counsel explored at length whether Plaintiff's § 1981 claims against Young and BJY were subject to the same elements and proof as Plaintiff's race-based Title VII claims against BJY. To prevail on his § 1981 claims against Young, Plaintiff maintained he only needed to prove the same elements required for his Title VII race-discrimination claims against BJY. Plaintiff relied on Footnote 3 in *Swinton v. Potomac Corp.* to support his contention that his § 1981 claims should be measured by the same standard as his Title VII race-discrimination claims:

> FN3. Though *Ellerth* and *Faragher* involve Title VII, their reasoning applies to cases involving § 1981 and RCW 49.60 et seq. *See Jurado v. Eleven–Fifty Corp.*, 813 F.2d 1406, 1412 (9th Cir.1987) ("An employee may seek relief under both Title VII and section 1981 for racial discrimination in employment. *Lowe [v. City of Monrovia]*, 775 F.2d [998], 1010 [ (9th Cir.1986) ] .... The same standards apply, and facts sufficient to give rise to a Title VII claim are also sufficient for a section 1981 claim. *Id.*"); *see also Nichols v. Azteca Restaurant Enters.*, 256 F.3d 864, 875 n. 9 (9th Cir.2001)(similarity of Title VII and

WLAD); *Xieng v. Peoples Nat'l Bank,* 120 Wash.2d 512, 844 P.2d 389, 392 (1993)(same).

270 F.3d 794, 803 (9th Cir.2001).

Because Title VII does not apply to individual defendants, however, Defendants argued at trial it would be error to use Title VII standards to instruct the jury on the elements of Plaintiff's § 1981 claims against Young. According to Defendants, Plaintiff had to prove a specific intent to discriminate on the basis of race in order to prevail on his § 1981 claims. Indeed, "[p]roof of intent to discriminate is necessary to establish a violation of [S]ection 1981." *Imagineering, Inc. v. Kiewit Pac. Co.,* 976 F.2d 1303, 1313 (9th Cir.1992), *cert. denied,* 507 U.S. 1004, 113 S.Ct. 1644, 123 L.Ed.2d 266 (1993). In *Imagineering, Inc.,* the court cited the Supreme Court's decision in *General Building Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 390–91, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982), in which the Court explained the historical significance of and the legislative context in which § 1981 was enacted. The Court noted § 1981 prohibited only "purposeful discrimination."

The Court and the parties did not find any direct authority to support the principle that Title VII race-discrimination standards applicable in a § 1981 claim against an employer also control a companion § 1981 claim against an individual defendant. Moreover, neither the Court nor the parties identified any authority that explained whether "purposeful discrimination" under § 1981 required proof of specific intent to discriminate on the basis of race. Although the parties did not proffer any explicit instruction to address this particular issue, Defendants insisted on a specific-intent instruction. Plaintiff, in turn, maintained a standard Title VII-type instruction was sufficient for his § 1981 claims against Young. The Court, therefore, was left to reconcile whether there was any inconsistency between "purposeful discrimination" in a § 1981 race-discrimination claim against an individual defendant and an employer-defendant's "mere" intent to discriminate in violation of Title VII.

To prevail on Title VII and § 1981 claims, it is well-settled that a plaintiff must show some form of intentional discrimination. *See, e.g., Robinson v. Adams,* 847 F.2d 1315, 1316 (9th Cir.1987), *cert. denied,* 490 U.S. 1105, 109 S.Ct. 3155, 104 L.Ed.2d 1018 (1989); *Craig v. Los Angeles County,* 626 F.2d 659, 668 (9th Cir.1980), *cert. denied,* 450 U.S. 919, 101 S.Ct. 1364, 67 L.Ed.2d 345 (1981). In addition, the courts seem to equate Title VII with § 1981 for purposes of analysis and instruction concerning a claim against an employer. In light of the legislative purpose underlying § 1981, the fact that Title VII does not apply to an individual defendant, the absence of precedential guidance from the appellate courts, and the risk of unnecessarily confusing the jury, this Court opted in favor of a specific-intent instruction only with respect to Plaintiff's § 1981 claims against Young and did not include a specific-intent instruction for Plaintiff's § 1981 claims against BJY. The Court, therefore, did not affirmatively require the jury to find against BJY based on vicarious liability if the jury found Plaintiff proved one or both of his § 1981 claims against Young. Accordingly, as to Plaintiff's § 1981 claim based on a hostile work environment, the Court instructed the jury that Plaintiff had to prove by a preponderance of the evidence all of the following elements:

1. Plaintiff is a member of a racial minority. (As to this element, I instruct you that the Arab race is a racial minority.)

2. Defendants subjected Plaintiff to verbal or other conduct of a racial

nature by addressing him, after his objection, by a non-Arab, Western name;

3. the conduct was unwelcome;

4. the conduct was sufficiently pervasive [2] to alter the conditions of Plaintiff's employment and create a racially hostile or abusive work environment;

5. Plaintiff perceived the working environment to be abusive or hostile; and

6. a reasonable Arab man in Plaintiff's circumstances would consider the working environment to be abusive or hostile.

*In addition, as to Defendant Gregg Young, Plaintiff must prove Defendant Young acted with a specific intent to discriminate against Plaintiff on the basis of Plaintiff's race.*

(Emphasis added.)

As to Plaintiff's § 1981 claim of unlawful termination, the Court instructed the jury that Plaintiff had to prove by a preponderance of the evidence all of the following elements:

1. Plaintiff was discharged by Defendant BJY, Inc., and/or Defendant Young; and

2. Plaintiff's race was a motivating factor in Defendants' decision to discharge Plaintiff.

Again, as to Young, the Court instructed the jury that Plaintiff had to prove Young acted with a specific intent to discriminate against Plaintiff on the basis of Plaintiff's race.

As noted, the jury found in favor of BJY on the § 1981 hostile work-environment claim, but the jury also found against Young on the same claim. These Verdicts can be reconciled only if the legal elements of the § 1981 hostile work-environment claim against an individual defendant are different from the elements of an other-·

wise identical Title VII hostile work-environment claim against an employer. The Court has not found any decisions by other courts to support that conclusion notwithstanding the Court's pragmatic approach to resolve the jury instructions on this question at the conclusion of trial. Accordingly, the Court concludes the Verdicts on Plaintiff's § 1981 hostile work-environment claim are inconsistent and cannot be reconciled on any theory consistent with the evidence and the law.

■ Plaintiff contends the proper response to this inconsistency is to enter judgment as a matter of law against BJY on the basis of vicarious liability for the hostile work-environment compensatory and punitive damages the jury awarded Plaintiff when the jury found against Young on Plaintiff's § 1981 hostile-work environment claim. The Court agrees.

■ In *Faragher v. City of Boca Raton,* the Supreme Court held "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." 524 U.S. 775, 777, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). *Accord Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). In *Burrell v. Star Nursery, Inc.,* the Ninth Circuit explained the *Faragher* rule as follows: "[I]f the harassment is actionable and the harasser has supervisory authority over the victim, we presume that the employer is vicariously liable for the harassment." 170 .F.3d 951, 956 (9th Cir.1999). The presumption of vicarious liability may be overcome if the "alleged harassment has not culminated in a tangible employment action" and if the employer can prove both elements of

---

**2.** Plaintiff conceded Young's conduct was not "severe," and the parties agreed the Court should instruct the jury only that the conduct must be "pervasive."

the affirmative defense enunciated in *Faragher*. *Id.* "The *Faragher* affirmative defense requires proof of two elements by a preponderance of the evidence: (a) the employer exercised reasonable care to prevent and correct promptly any ... [discriminatory] behavior, and (b) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *E.E.O.C. v. Dinuba Med. Clinic*, 222 F.3d 580, 587 (9th Cir.2000)(internal quotations omitted).

In this case, BJY did not plead, prove, or seek any jury instruction to avoid vicarious liability pursuant to *Faragher*. In any event, the evidence indicates only one conclusion: Young, CEO of BJY, at all times acted in the course and scope of his employment. The presumption that BJY is vicariously liable under Title VII for Young's conduct in creating a racially-hostile work environment, therefore, was not overcome. Accordingly, Plaintiff was entitled to have the Court explicitly instruct the jury that it must find BJY vicariously liable for any damages the jury awarded Plaintiff on his § 1981 claim against Young, but the Court declined to do so.

■ As noted, "[j]udgment as a matter of law is proper if the evidence, construed in the light most favorable to the nonmoving party, allows only one reasonable conclusion and that conclusion is contrary to the one reached by the jury." *Mockler v. Multnomah County*, 140 F.3d at 815 n. 8 (internal quotations and citation omitted). In this case, the Court finds the sole conclusion that can be drawn from the evidence and the jury's finding against Young requires entry of judgment as a matter of law against BJY based on its vicarious liability under Title VII for Young's conduct in creating a racially-hostile work environment. A new trial on the question of damages against BJY, however, is unnecessary because the jury's finding as to

Plaintiff's compensatory and punitive damages for this claim are supported by substantial evidence.

Accordingly, the Court finds it erred when it did not instruct the jury that BJY would be vicariously liable to Plaintiff if the jury found against Young on Plaintiff's § 1981 race-discrimination claim. The Court, therefore, grants Plaintiff's Motion of Judgment as a Matter of Law and to Amend Judgment Against BJY, Inc., as to Plaintiff's race-based hostile work-environment claim against BJY and orders an amended judgment to enter against BJY for the same amount in compensatory and punitive damages the jury awarded to Plaintiff on his § 1981 hostile work-environment claim. The Court also denies Young's alternative Motion for New Trial.

**II. Substantial evidence exists to support the jury's finding that Plaintiff was an exempt employee and, therefore, was not entitled to overtime wages.**

■ In response to the Court's interrogatories, the jury found Plaintiff proved he worked more than 40 hours per week during his employment with BJY. The jury also found, however, that both Young and BJY proved Plaintiff was an exempt employee and, therefore, was not entitled to overtime wages because Plaintiff was employed "in either an administrative and/or professional capacity" for the relevant period. Plaintiff moves for judgment as a matter of law and asserts the evidence was insufficient for Defendants to have established either exemption. Defendants, on the other hand, maintain the evidence was sufficient to support the jury's finding on either or both exemption. The Court agrees with Defendants. The Court, therefore, denies Plaintiff's Motion on this issue.

### III. Oregon law does not preclude the "same decision" defense against Plaintiff's state law wage-retaliation claim.

■ In response to the Court's interrogatories, the jury found BJY terminated Plaintiff's employment. Although the jury found Plaintiff's complaints about unpaid wages were a substantial motivating factor in the decision of BJY to terminate Plaintiff's employment, the jury also found BJY would have made the same decision in the absence of Plaintiff's complaints. The jury logically could have based these findings on evidence that BJY ultimately closed its Portland office because Plaintiff, its only employee there, was not licensed to provide the professional services BJY sold to its clients.

Plaintiff argues the "same decision" defense does not apply to his retaliation claim brought pursuant to Or.Rev.Stat. § 652.355. The statute provides in part:

(1) No employer shall discharge or in any other manner discriminate against any employee *because:*

(a) The employee has made a wage claim or discussed, inquired about or consulted an attorney or agency about a wage claim.

(Emphasis added.)

As noted, the jury found Plaintiff's complaints about unpaid wages were a substantial motivating factor in BJY's decision to terminate Plaintiff's employment. Plaintiff argues the jury's finding means BJY discharged him "because" he made a wage claim in violation of Or.Rev.Stat. § 652.355. Plaintiff reasons, therefore, the "same decision" defense does not apply.

Plaintiff relies on *Brown v. American Property Management Corp.*, 167 Or.App. 53, 1 P.3d 1051 (2000). In *Brown*, the employer argued an issue of fact should have precluded the trial court from entering summary judgment against the employer as to its motive in suspending the plaintiff after he made a wage claim. The employer contended it suspended the plaintiff to avoid future liability rather than to retaliate for the plaintiff's wage claim. In rejecting the employer's position, the Oregon Court of Appeals held the employer's proffered motive was, in fact, consistent with the plaintiff's claim that he was suspended because of his wage claim. The court, therefore, affirmed the trial court's grant of summary judgment in favor of the employer. The court, however, did not analyze the issue in terms of a "same decision" defense. Indeed, this Court has found no Oregon case that addresses this question for purposes of Or. Rev.Stat. § 652.355.

In *Hardie v. Legacy Health System*, however, the Oregon Court of Appeals explained the proper causation standard to apply in a "mixed motive" employment discrimination case under Oregon law is a "but for" test:

To prevail in a "mixed motive" claim, a plaintiff must be able to "show that he or she 'would not have been fired but for the unlawful discriminatory motive of the employer.'" We have not further clarified the meaning of the "but for" standard in employment discrimination cases.... We have also described the evidentiary standard for employment discrimination claims by using language other than "but for." ....[We have] held that the protected activity must be a "substantial factor" in the wrongful discharge.... [We have] held that an employer's wrongful purpose must be "a factor that made a difference." The crux of the standard, regardless of which phraseology is attached to it, is whether, in the absence of the discriminatory motive, the employee would have been treated differently.

167 Or.App. 425, 435, 6 P.3d 531 (2000) (citations omitted).

In *Hardie*, the plaintiff alleged her employer discharged her in violation of Or. Rev.Stat. § 659.410(1) because she made a workers' compensation claim. To establish her *prima facie* case for retaliatory discrimination under that statute, the plaintiff was required to "show (1) that the plaintiff invoked the workers' compensation system; (2) that the plaintiff was discriminated against in the tenure, terms or conditions of employment; and (3) that the employer discriminated against the plaintiff in the tenure or terms of employment because he or she invoked the workers' compensation system." *Id.* at 433, 6 P.3d 531.

Plaintiff had to meet the same causation standard in this case to establish his claim of retaliatory discrimination in violation of Or.Rev.Stat. § 652.355. Plaintiff, therefore, had to show he would not have been terminated "but for" the retaliatory motive of BJY. Because BJY proved it would have made the same decision to terminate Plaintiff regardless of any retaliatory motive, Plaintiff necessarily failed to make the required showing. The Court, therefore, denies this part of Plaintiff's Motion.

## IV. Plaintiff waived his objection to "what appears to be a typographical error" in the Verdict form concerning Plaintiff's FLSA retaliation claim against Young.

█ Finally, Plaintiff moves for judgment as a matter of law on his claim against Young for retaliation under the FLSA. Plaintiff asserts the Court erred in its instructions on the Young Verdict form by directing the jury not to answer Questions 3A through 3E. Specifically, the Court's instructions directed the jury to "proceed to Part 4" concerning Plaintiff's claims for unpaid wages and, thus, to bypass Part 3 concerning Plaintiff's wage retaliation claim if the jury determined in Question 2A that Young did not cause BJY to terminate Plaintiff's employment be-

cause of Plaintiff's race. Even if Young did not cause BJY to terminate Plaintiff's employment based on Plaintiff's race, however, that fact did not dispose of Plaintiff's claim that Young was liable to Plaintiff as an "employer" on Plaintiff's FLSA wage-retaliation claim. The Young Verdict form, therefore, contained a substantive error.

Plaintiff, nonetheless, waived any objection to this error when he failed to object before the Court submitted the Young Verdict form to the jury and before the Court received the Verdict and discharged the jury. Before the Court instructed the jury, the Court worked with counsel at length to develop the interrogatory-forms of verdict that would assist the jury in sorting through Plaintiff's numerous, overlapping claims. The Court submitted its proposed forms of verdict to the parties in advance and made appropriate changes and corrections in response to the parties' suggestions. Although the Court regrets its error, Plaintiff had numerous opportunities to discover the error and to bring it to the Court's attention so that it could be corrected while the jury was still available. Having failed to do so, Plaintiff waived his objections to the Verdict form as to this issue.

In any event, the Court concludes the error likely was harmless. As noted, the jury found BJY would have made the same decision to terminate Plaintiff even if Plaintiff's complaints about unpaid wages had not been a factor in that decision. The Court finds, therefore, there is no view of the evidence under which this "same decision" defense would apply to BJY but not to Young. The Court, therefore, denies Plaintiff's Motion on this ground.

### CONCLUSION

For these reasons, the Court **DENIES** Defendant Gregg Young's Motion for

**1154**

Judgment as a Matter of Law and Alternatively a New Trial (# 115).

The Court also **GRANTS in part** that portion of Plaintiff Mamdouh El–Hakem's Motion for Judgment as a Matter of Law and to Amend Judgment or Alternatively for New Trial (# 117) in which Plaintiff seeks an amended judgment against Defendant BJY, Inc., for its vicarious liability pursuant to Title VII for the $15,000 compensatory damages and $15,000 punitive damages awarded to Plaintiff on his § 1981 claim against Defendant Young. Accordingly, the Court orders an amended judgment to enter against Defendant BJY, Inc., consistent with this Opinion and Order. The Court **DENIES** the remainder of Plaintiff's Motion.

IT IS SO ORDERED.