Annette THOMAS, Plaintiff–Appellant,

v.

**CITY OF BEAVERTON; Linda Adlard; Sandra Miller, Defendants–Appellees.**

No. 03–35120.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 3, 2004.

Filed Aug. 16, 2004.

Thomas M. Steenson and Beth Creighton, Steenson, Schumann, Tewksbury & Rose, P.C., Portland, OR, for the plaintiff-appellant.

Marjorie A. Speirs, Hoffman, Hart & Wagner, LLP, Portland, OR, for the defendants-appellees.

Before: GOODWIN, McKEOWN and FISHER, Circuit Judges.

FISHER, Circuit Judge.

Annette Thomas was the municipal court administrator for the City of Beaverton, Oregon. Her supervisor, Sandy Miller, placed her on extended probation after Thomas refused to pass over a subordinate employee, Susie Perry, for a promotion to senior court clerk in 2001 despite Miller's initial insistence that Perry should not be promoted. Perry, an African American, had previously sued the City for failing to promote her to the same position in 1996 and 1997, and the jury had found that the City had unlawfully retaliated against her for complaining of racial discrimination. After the City terminated Thomas, she sued the City, Miller and other city employees for violations of the First and Fourteenth Amendments, Title VII, Oregon Revised Statute §§ 659A.030, 652.355 and for common law wrongful discharge. The district court granted summary judgment to the defendants.

We hold that Thomas has offered sufficient evidence to create a genuine issue of material fact as to whether her refusal to facilitate Miller's allegedly unlawful retaliatory treatment of Perry in the hiring process constituted expressive conduct on a matter of public concern. For similar reasons, we hold that Thomas has offered sufficient evidence that she engaged in an activity protected under Title VII by opposing retaliation against Perry on account

of Perry's own Title VII suit. Therefore, we reverse the grant of summary judgment on her First Amendment and Title VII retaliation claims. We affirm summary judgment, however, on her equal protection claim, because there is insufficient evidence of racial animus, as well as on her remaining claims.

## I. FACTS

In October 2000, Annette Thomas was hired as the municipal court administrator for the City of Beaverton and placed on a standard six-month probationary period for new employees.[1] Her job duties included supervising and hiring court clerks, one of whom was Susie Perry. Before Thomas joined the municipal court, Perry had made complaints of racial discrimination against Linda Adlard, Beaverton mayor's chief of staff, who was then in charge of the municipal court's personnel matters. After Perry was passed over for a promotion to the position of senior court clerk in 1996 and 1997, she filed suit against Adlard and the City, alleging racial discrimination and retaliation for complaining about racial discrimination in violation of Title VII and other state and federal statutes. A jury found that Perry had not been discriminated against because of her race but had been retaliated against for her complaints about racial discrimination. The judge, who tried one of the state claims, specifically found that Perry was qualified for the senior court clerk position and that the City's reasons for not promoting Perry were pretextual. After the suit, Mayor Robert Drake transferred Adlard's authority to make personnel decisions to Sandy Miller, the human resources director.

In early 2001, a senior court clerk position opened up again. As Thomas was preparing to recruit applicants for the position, Miller told her to be "ready for a lawsuit when we don't hire [Perry]." Thomas responded by asking whether Miller meant "[i]f we don't hire [Perry]." Miller looked confused at first but then said, "[R]ight, but go ahead and start documenting every incident or problem with [Perry], no matter how small." Miller had never instructed Thomas to document incidents with any other employee in the hiring process. Thomas consequently refused to document incidents involving Perry because she thought it was unfair to Perry and there was nothing substantial to document.

After interviewing the candidates, the interviewers, who included Thomas, concluded that Perry had interviewed the best, was the most qualified for the position and should be promoted to the position. When Thomas recommended to Miller that Perry should be promoted, Miller said that Perry would not be a good senior court clerk and that if Perry were promoted "there would be problems with Ms. Adlard because of the previous lawsuit." Thomas responded that she could not justify not promoting Perry.

Afterwards, Gaye Fortier, the human resources staffing representative and one of the interviewers, told Thomas, "I am warning you. [Miller] will not hire [Perry] for the position." Thomas asked Fortier what she thought about that, and Fortier said that Miller was wrong.

Instead of accepting the interviewers' recommendation, Miller arranged a second interview with Perry, which Miller conducted with Thomas present. Afterwards, Miller said, "I don't think she did a good

---

**1.** We state the facts in the light most favorable to Thomas, as we must in reviewing the summary judgment against her.

job at all; I think we should reopen the job and keep looking." Thomas disagreed and said so to Miller.

Miller still did not approve Perry's promotion and instead required her to work "out-of-class" in the senior court clerk position for two months under probation status in order to determine whether she would meet the criteria for the position. After Perry successfully performed all the tasks and tests that were required of her, Thomas kept after Miller to promote Perry. Although Miller continued to be critical of Perry, she eventually approved Perry's promotion on May 7, 2001.

During Perry's probationary period, Miller met with Thomas and informed her that she was also being placed on extended probation because she needed improvement in two areas: attendance and data analysis. Before that time, Thomas had not been informed of any problems with her job performance, nor were other court or city employees aware of any such problems. Shortly after the meeting, Thomas sent Miller an eight-page written response (the "first addendum"). In it she detailed many of the accomplishments she had achieved and the obstacles that she had faced when she first started the job, including what she described as "staff personnel issues," "a total breakdown of Court policies and procedures" and "clear violations of law."

On May 22, Miller provided Thomas with a formal written appraisal. The primary problems that the appraisal identified were Thomas' computer skills, data analysis and attendance. Miller explained that she was extending Thomas' probation due to her deficiencies in data analysis. After receiving the written appraisal,

Thomas sent Miller a memorandum on May 25, 2001 (the "second addendum"), criticizing Miller. In Miller's opinion, the second addendum reflected Thomas' unwillingness to accept responsibility for her performance deficiencies and to raise her work performance despite the extension of her probationary period. Miller terminated Thomas' employment on May 31.

Thomas sued the City for unlawful retaliation under Title VII and Oregon Revised Statute § 659A.030, wage retaliation under Oregon Revised Statute § 652.355 and wrongful discharge. She also brought a 42 U.S.C. § 1983 claim against the City, Adlard and Miller in their individual and official capacities for violating the First and Fourteenth Amendments. The defendants moved for summary judgment, which the district court granted based on the magistrate judge's findings and recommendations. Thomas now appeals. We have jurisdiction under 28 U.S.C. § 1291.

## II. STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo. *See Alexander v. City & County of San Francisco*, 29 F.3d 1355, 1359 (9th Cir.1994). "Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues of material fact remaining for trial, and the moving party is entitled to judgment as a matter of law." *Id.*

## III. FIRST AMENDMENT RETALIATION

■ Thomas contends that the defendants retaliated against her for supporting Perry's promotion.[2] In order to establish a prima facie case of retaliation under the

---

2. The allegedly protected speech at issue in this case is Thomas' support of Perry's promotion prior to the time Thomas received a poor performance review. We do not consider whether Thomas' speech in her addenda is protected speech, because her complaint does not allege that the two addenda caused the retaliation.

First Amendment, Thomas must show that (1) she engaged in protected speech; (2) the defendants took an "adverse employment action" against her; and (3) her speech was a "substantial or motivating" factor for the adverse employment action. *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir.2003); *see also Ulrich v. City & County of San Francisco*, 308 F.3d 968, 976 (9th Cir.2002). Under the first element, Thomas' speech is protected only if she spoke "as a citizen upon matters of public concern" rather than "as an employee upon matters only of personal interest." *Roe v. City of San Diego*, 356 F.3d 1108, 1112 (9th Cir.2004); *see Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

■ If Thomas can establish a prima facie claim, the burden shifts to the employer to demonstrate either that, under the balancing test established by *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), the employer's legitimate administrative interests outweigh the employee's First Amendment rights or that, under the mixed motive analysis established by *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), the employer "would have reached the same decision even in the absence of the [employee's] protected conduct." *Ulrich*, 308 F.3d at 976–77; *see Bd. of County Comm'rs v. Umbehr*, 518 U.S. 668, 675, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996).

■ The district court, adopting the magistrate judge's conclusions, found that Thomas' speech did not constitute speech on a matter of public concern and thus was not protected. Neither the magistrate judge nor the district court addressed the second and third elements of the prima facie case. Thus, we consider only the first element of Thomas' prima facie

case—the public concern test. In determining whether Thomas' speech in support of Perry's promotion meets this threshold, we consider the "content, form, and context" of her speech. *Connick*, 461 U.S. at 147–48, 103 S.Ct. 1684; *see Ulrich*, 308 F.3d at 978.

## A. Content

■ The district court concluded that Thomas' support of Perry for the promotion was not a matter of public concern because her speech was about a personnel matter. However, the type of personnel matters that we have deemed unprotected under the public concern test are employment grievances in which the employee is complaining about her *own* job treatment, not personnel matters pertaining to others. *See Ulrich*, 308 F.3d at 978 (holding that a doctor's protest against the laying off of other physicians was of public concern); *Hyland v. Wonder*, 972 F.2d 1129, 1138 (9th Cir.1992) (concluding that an employee's memorandum recommending termination of the Director of Juvenile Hall was not an unprotected internal personnel dispute because the employee's memorandum "did not concern [the employee's] dissatisfaction with his own position or on-the-job treatment"). Even though Thomas' support for Perry concerned a personnel matter, it did not pertain to Thomas' own job status; therefore, it is the type of personnel matter that can be constitutionally protected under the public concern test.

■ Thomas argues that she opposed Miller's treatment of Perry because she believed that the defendants were discriminating against Perry because of Perry's race and that they were retaliating against Perry because of Perry's prior discrimination complaints and lawsuit. Although the record is devoid of any evidence that Thomas explicitly or implicitly expressed any concern that the defendants were

treating Perry unfairly because she was African American, Thomas' speech does not have to be about racially disparate treatment in order to be protected. Unlawful conduct by a government employee or illegal activity within a government agency is a matter of public concern. *See Ceballos v. Garcetti,* 361 F.3d 1168, 1174 (9th Cir.2004) (holding that falsification of information in a search warrant affidavit was a matter of public concern); *Chateaubriand v. Gaspard,* 97 F.3d 1218, 1222–23 (9th Cir.1996) (concluding that an employee's complaints of illegal campaign activity and pressure to participate in it were of public concern); *Roth v. Veteran's Admin.,* 856 F.2d 1401, 1406 (9th Cir.1988) (ruling that an employee's reports of safety regulation violations, unethical conduct, misuse of public funds and mismanagement constituted speech of public concern).

In this case, there is strong evidence that Miller was unlawfully retaliating against Perry because of her prior lawsuit against the City and Adlard. At the inception of the hiring process, Miller told Thomas to be "ready for a lawsuit when we don't hire [Perry]" even before they had evaluated and interviewed the candidates. Miller also made Perry jump through hoops that Miller had not required of other employees before they were promoted, such as interviewing a second time and performing out-of-class for a probationary period. In Perry's previous suit, the district court had found that Perry was well-qualified for the senior court clerk position, the same position that became vacant in 2000. Similarly, the interviewers in 2001 unanimously concluded that Perry was the most qualified candidate of those interviewed. This evidence strongly suggests that Miller's assertion that Perry would not be a good senior court clerk was pretextual.

Miller also gave a patently illegitimate reason for not promoting Perry to the senior court clerk position. At one point, Miller told Thomas that "there would be problems with Ms. Adlard because of the previous lawsuit" if Perry were promoted. Miller also admitted in her deposition that she probably told Thomas that Adlard would have a question if Perry were promoted. This evidence indicates that Miller's motivations were retaliatory in nature: Miller was unwilling to promote Perry due to "problems" created by Perry's past lawsuit.

■ Moreover, Miller's treatment of Perry need not have been actually unlawful for Thomas' opposition to be protected expression. *See Ceballos,* 361 F.3d at 1179 (concluding that an assistant district attorney engaged in protected speech when he alleged criminal wrongdoing by an officer even though those allegations proved to be erroneous); *Johnson v. Multnomah County, Or.,* 48 F.3d 420, 424 (9th Cir.1995) (holding that an employee's accusations of mismanagement and possible criminal conduct against her immediate supervisor constituted speech of public concern even though they were recklessly false).

■ [4] Although Thomas did not explicitly tell Miller that she believed Miller was unlawfully retaliating against Perry, an employee need not expressly accuse her supervisor or employer of illegal activity. Rather, she may convey an implicit message of disapproval of the illegality of the activity through her conduct by refusing to facilitate or participate in it. *See Nunez v. Davis,* 169 F.3d 1222, 1227–28 (9th Cir. 1999) (holding that an employee's refusal to limit attendees at training seminars to those court employees who had worked on her supervisor's re-election campaign was expressive conduct on a matter of public concern).

■ The question then is whether Thomas' actions were expressive. Conduct is expressive when "[a]n intent to convey a particularized message was present, and in the surrounding circumstances the likelihood was great that the message would be understood by those who viewed it." *Spence v. Washington*, 418 U.S. 405, 410–11, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974) (per curiam); *see also Nunez*, 169 F.3d at 1226. Here, there is sufficient evidence in the record to create a genuine issue of material fact as to whether Thomas intended to convey a message that Miller's treatment of Perry was unlawful. During the hiring process, Thomas told Miller that she "could not justify" passing over Perry for promotion. This statement went beyond expressing an opinion about Perry's qualifications; it implies that any justification for not promoting Perry that Thomas would be forced to articulate would be illegitimate or pretextual. Furthermore, Thomas' references in the first addendum to "staff personnel issues," a "breakdown of Court policies and procedures" and "clear violations of law" show that she consciously attempted to identify and correct problems of mismanagement and illegal conduct since she started her job.[3] Based on these statements, a factfinder could reasonably infer that Thomas' refusal to acquiesce to Miller's treatment of Perry was intended to convey her disapproval of Miller's unlawful retaliation against Perry.

In addition, the likelihood is great that an audience would understand Thomas' conduct to convey a message of disapproval of the retaliation. Miller and many other city employees knew of the jury verdict, which found that Adlard and the City had unlawfully retaliated against Perry in passing her over for the promotion in 1996 and 1997. In light of this verdict, they might well understand Thomas' opposition to Miller's treatment of Perry during the 2001 hiring process as expressing her disapproval of the City's continued retaliatory treatment of Perry. In sum, Thomas has shown enough to create a genuine issue of material fact as to whether her refusal to facilitate Miller's allegedly retaliatory treatment of Perry conveyed an implicit message that she disapproved of what she reasonably believed to be unlawful retaliation.

**B. Form and Context**

■ To the extent that Thomas' conduct was expressive, the message was communicated to her immediate supervisor, Miller, and other court employees. She did not, however, attempt to inform the general public about the allegedly retaliatory practices. That Thomas chose to convey her views privately rather than publicly is not determinative of whether her expression is entitled to protection. *See Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 415–16, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979). Because content is the most important factor, we have concluded that speech about a matter of public concern may be protected even when made in a private context. *See, e.g., Ceballos*, 361 F.3d at 1174 (holding that a memorandum given to the employee's supervisors was protected speech when the memorandum alleged criminal wrongdo-

---

3. Thomas' statements in the first addendum are relevant here as circumstantial evidence of her intent at the time that she resisted Miller's treatment of Perry. The defendants argue that Thomas' mention of "clear violations of law" is too ambiguous to be construed as a reference to Perry's promotion.

However, taking the evidence in the light most favorable to Thomas, the statement sufficiently alludes to the City's retaliatory action against Perry. Their argument also fails because it mistakenly reads the two addenda in isolation from Thomas' verbal objections to the City's reluctance to promote Perry.

ing); *Ulrich,* 308 F.3d at 979 ("[T]he public employee does not forfeit protection against governmental retaliation because he chose to press his cause internally."); *Chateaubriand,* 97 F.3d at 1223 ("The form of the speech—complaints to staff and superiors rather than to the general public—does not remove it from the realm of public concern"). By expressing her disapproval of the allegedly retaliatory treatment of Perry to those responsible for deciding whom to promote to the vacant position, Thomas aired her views in an effective forum. Indeed, the evidence suggests that Thomas' conduct led to the eventual, albeit delayed, promotion of Perry.

▮▮ In sum, there is sufficient evidence to create a genuine issue of material fact as to whether Thomas' refusal to acquiesce in Miller's allegedly retaliatory treatment of Perry was expressive conduct on a matter of public concern. Thus, the district court erred in granting summary judgment to the City and Miller on the public concern element of Thomas' prima facie case. We remand to the district court to determine in the first instance whether Thomas has shown the other elements of a prima facie case against the City and Miller, and if so, whether they can establish a defense under the *Pickering* balancing test or *Mt. Healthy* mixed motive analysis.

▮▮ The district court did not err in granting summary judgment to Adlard, however, because the record does not indicate that Adlard participated in or was responsible for the decisions to extend Thomas' probation or to terminate her. After the verdict in Perry's suit, Adlard was relieved of her supervisory duties over Beaverton municipal court's personnel matters. Thus, summary judgment on all claims against Adlard, including the First Amendment retaliation claim, was appropriate.

## IV. TITLE VII

▮▮ In order to establish a prima facie case of retaliation under Title VII, Thomas must demonstrate that (1) she engaged in an activity protected under Title VII; (2) her employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *See Ray v. Henderson,* 217 F.3d 1234, 1240 (9th Cir.2000). The district court determined that Thomas did not establish the elements of a Title VII prima facie case. The City concedes on appeal, however, that the extension of Thomas' probation as well as her ultimate termination were adverse employment actions. Thus, Thomas has satisfied the second element of her prima facie case. The dispute between the parties concerns only the first and third elements.

### A. Protected Activity

To show the first element, Thomas relies upon the opposition clause of 42 U.S.C. § 2000e–3(a), which states in relevant part, "It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]...." 42 U.S.C. § 2000e–3(a) (2004). Title VII prohibits, *inter alia,* discrimination on the basis of race, *id.* § 2000e–2(a)(1), and retaliation against an employee for making a charge or otherwise participating in a Title VII proceeding, *id.* § 2000e–3(a).

Thomas argues that the record contains adequate facts to show that she reasonably believed that the City either discriminated against Perry on account of Perry's race or retaliated against Perry because of Per-

ry's success in obtaining a verdict against the City and Adlard. As discussed above in connection with Thomas' First Amendment claim, the evidence is insufficient to show that Thomas opposed discrimination against Perry on account of Perry's race. Nonetheless, there is sufficient evidence to create a genuine issue of material fact as to whether Thomas opposed retaliation against Perry on account of Perry's own Title VII suit. Consequently, Thomas has offered enough evidence that she engaged in protected opposition activity under Title VII to satisfy the first element of her prima facie case.

## B. Causal Link

■■■■ The causal link between a protected activity and the alleged retaliatory action "can be inferred from timing alone" when there is a close proximity between the two. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir.2002). Here, Thomas recommended hiring Perry for the position on February 22, 2001, and continued to oppose Miller's treatment of Perry thereafter. On April 11, approximately seven weeks after Thomas first supported Perry's promotion, Miller informed Thomas that she was being placed on extended probation. We have held that events occurring within similar intervals of time are sufficiently proximate to support an inference of causation. *See Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.1987) (holding that sufficient evidence of causation existed where adverse employment

action occurred less than three months after the protected activity); *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731–32 (9th Cir.1986) (concluding that there was adequate evidence of a causal link where the retaliatory action occurred less than two months after the protected activity).[4]

■■■■ Because Thomas has shown that she engaged in protected opposition activity under Title VII and that a causal link exists between this protected activity and the extension of her probation, the district court erred in concluding that Thomas failed to establish a prima facie case of retaliation under Title VII.[5] We remand to the district court to determine in the first instance whether the City has offered legitimate nonretaliatory reasons for extending Thomas' probation and whether those reasons are pretextual.

## V. Equal Protection

■■■■ Thomas argues that the same evidence that supports her Title VII retaliation claim also creates a triable issue on her § 1983 equal protection claim. To establish an equal protection violation, Thomas must show that the defendants were motivated by a racially discriminatory purpose. *See Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir.1994); *Stones v. Los Angeles Cmty. Coll. Dist.*, 796 F.2d 270, 275 (9th Cir.1986). As stated above, although there is evidence that the defendants retaliated against Thomas for opposing retaliation against Perry,

4. The employer's awareness of the protected activity is also important in establishing a causal link. *See Yartzoff*, 809 F.2d at 1376. The record contains sufficient evidence suggesting that Miller knew that Thomas opposed Miller's treatment of Perry because it was retaliatory in nature.

5. Although the elements of a prima facie case under Oregon Revised Statute § 659A.030 are similar to those under Title VII, *see Pool v.*

*VanRheen*, 297 F.3d 899, 910 (9th Cir.2002), we decline to review the grant of summary judgment on Thomas' § 659A.030 claim, because she failed to make any specific and distinct arguments, cite any case law or even recite the elements relating to this claim. *See Miller*, 797 F.2d at 738 (declining to consider claims not "specifically and distinctly argued in appellant's opening brief").

there is insufficient evidence that any of the retaliation against either Perry or Thomas was motivated by racial animus. Thus, we affirm summary judgment in favor of the defendants on Thomas' equal protection claim. *See Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 754–55 (9th Cir.2001) (affirming summary judgment against the plaintiffs because they produced insufficient evidence that the employer's decision to demote them was "racially motivated" (quoting *FDIC v. Henderson*, 940 F.2d 465, 473 (9th Cir.1991))); *see also Maynard*, 37 F.3d at 1405 (reversing jury's verdicts for the plaintiff because the evidence did not show that the retaliation against the plaintiff "occurred because [he] assisted a Black person," but rather "suggest[ed] an alternative motive for the defendants' actions").

### VI.   OTHER CLAIMS

 The district court properly granted summary judgment on Thomas' wage retaliation claim. The record does not demonstrate that Thomas "made a wage claim," Or.Rev.Stat. § 652.355(1)(a) (2004), or "expressed an intention to file a wage claim," *Brown v. Am. Prop. Mgmt. Corp.*, 167 Or.App. 53, 1 P.3d 1051, 1054 (2000). Nor does it show that she "discussed, inquired about or consulted an attorney or agency about a wage claim." Or.Rev.Stat. § 652.355(1)(a).

Summary judgment on her wrongful discharge claim was also proper. Even assuming that the City discharged Thomas in retaliation for her opposition to retaliation against Perry, Thomas did not suffer the kind of personal injury that would warrant providing a common law remedy of wrongful discharge in addition to the existing state and federal statutory remedies for retaliation. *See Carlson v. Crater Lake Lumber Co.*, 103 Or.App. 190, 796 P.2d 1216, 1220 (1990), *modified on other grounds*, 105 Or.App. 314, 804 P.2d 511 (1991).

### VII.   CONCLUSION

For the reasons stated, we reverse the district court's grant of summary judgment on Thomas' First Amendment retaliation claim against the City and Miller, and on her Title VII retaliation claim against the City. We affirm the grant of summary judgment to Adlard on all of the claims and to the remaining defendants on Thomas' equal protection, wage retaliation and common law wrongful discharge claims. Each party shall bear its own costs.

**AFFIRMED in part, REVERSED in part and REMANDED.**