Gigi CASTILLO, Plaintiff—Appellant,

v.

Cari M. DOMINGUEZ, Chairwoman, EEOC, Defendant—Appellee.

No. 03–55555.

D.C. No. CV–00–02560–IEG.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 7, 2004.

Decided Jan. 10, 2005.

Janice R. Mazur, William E. Mazur, Jr., Mazur & Mazur, El Cajon, CA, for Plaintiff–Appellant.

Beth L. Levine, Asst. U.S. Atty., U.S. Attorney CV, USSD–Office of the U.S. Attorney, San Diego, CA, for Defendant–Appellee.

Before HUG, PREGERSON, and BERZON, Circuit Judges.

### MEMORANDUM *

Gigi Castillo ("Castillo") appeals the district court's grant of summary judgment to Cari M. Dominguez, Chairwoman of the EEOC ("Dominguez").[1] This court has jurisdiction under 28 U.S.C. § 1291. As the facts are familiar to the parties, we do not recite them here except as necessary to understand our disposition. Reviewing the district court's decision de novo, *see Vasquez v. County of Los Angeles*, 349 F.3d 634, 639 (9th Cir.2003), we affirm in part and reverse in part.

Castillo, an Asian, Filipina woman, alleged in a 1999 complaint (1) that she had been discriminated against by the decision of Patrick Matarazzo ("Matarazzo"), the director of the San Diego Area Office of the EEOC, to promote Joyce Cooper instead of her to GS–13 Supervisory Investigator; (2) that Matarazzo's failure to promote her constituted retaliation for prior complaints; and (3) that she had been subjected to a hostile work environment. Castillo challenges the district court's deci-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. Dominguez replaced Ida Castro, the original defendant in this lawsuit, as chairwoman of the EEOC.

sion on each claim.[2]

We agree with the district court that Castillo fails to raise a *"genuine* issue of *material* fact," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), with respect to her discrimination and hostile work environment claims. Although it is generally correct that a "plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment," *Chuang v. Univ. of Cal. Davis, Bd. of Trustees,* 225 F.3d 1115, 1124 (9th Cir. 2000), Castillo has failed to meet her burden in this case as to those claims. She has, however, met her burden on summary judgment on the retaliation claim.

## I. 1999 Non–Selection—Discrimination Claim

■ Castillo has established a prima facie case for her claim that her 1999 non-selection for GS–13 Supervisory Investigator was discriminatory, "showing that (1) she belongs to a protected class; (2) she applied for and was qualified for a job for which the employer was seeking applicants; (3) despite being qualified, she was rejected; and (4) after her rejection, [the employer selected someone with comparable qualifications]." *Raad v. Fairbanks N. Star Borough Sch. Dist.,* 323 F.3d 1185, 1193 n. 6 (9th Cir.2003). In accordance with the *McDonnell Douglas* burden-shifting scheme, the defendant proffered a non-discriminatory reason for her non-selection: the superior qualifications of Joyce

Cooper ("Cooper"), a black woman who was serving in the supervisory investigator position on an acting basis, evidenced by Matarazzo's pre-decision three-page memorandum lavishly praising Cooper.

Faced with the defendant's evidence of a neutral basis for its decision to promote Cooper rather than her, Castillo failed to meet her burden of persuasion with regard to the overall claim of discriminatory motive for her non-selection. *See id.* at 1193–94. Although Castillo need not meet a burden of *production* to survive summary judgment, *see Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 149, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), she must prove on the basis of all the evidence that the non-discriminatory reason is a pretext for a discriminatory motive. *Id.* "The plaintiff can prove pretext (1) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Raad,* 323 F.3d at 1193 (internal citation and quotation marks omitted). Castillo has done neither.

Castillo pursued the first route. She raised the notion that Matarazzo recommended Cooper's promotion in exchange for Cooper's 1994 decision to drop her own complaint of discrimination against Matarazzo. This theory, however, does little to bolster Castillo's own claim of discrimination in her 1999 non-selection.[3] Castillo's explanation could not lead a reasonable

---

**2.** The district court also decided that it could not consider the merits of Castillo's complaints concerning the EEOC's refusal to reclassify her as a GS–12 Investigator between 1982 and 1985 or to promote her to GS–13 Supervisory Investigator before she filed her March 1999 application. Castillo does not challenge these rulings.

**3.** While this basis of attack might have left Castillo's claim intact if it were combined with relevant background evidence of discrimination by Matarazzo, Castillo presented no direct evidence of discrimination against her or against other people of similar backgrounds. The record instead provides evidence of favorable treatment for another Asian, Filipina woman in the office.

jury to believe that the defendant's lie was a pretext for discrimination against Castillo based on a protected ground, as opposed to a pretext designed to cover up an earlier "deal" between Cooper and the agency. Castillo therefore did not meet her ultimate burden of proof in establishing that it was more likely than not that she was not promoted because of her race, national origin, or sex.

## II. Retaliation

Castillo has, however, sustained her burden on her retaliation claim, with regard to her 1999 non-selection for GS–13 Supervisory Investigator. "To make out a prima facie case of retaliation, [Castillo] must establish 'that she acted to protect her Title VII rights, that an adverse employment action was thereafter taken against her, and that a causal link exists between those two events.'" *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1112 (9th Cir.2000) (quoting *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1465 (9th Cir. 1994)). Castillo has established that she engaged in many protected activities and was not selected for the 1999 position. She has raised a genuine issue of material fact concerning whether her protected activities influenced the 1999 decision and so may proceed to trial on the causation question.

The defendant argues that causation may not be inferred because too much time lapsed between her last complaint and the 1999 non-selection.[4] While it is correct that "[t]he causal link between a protected activity and the alleged retaliatory action can be inferred from timing alone when there is a close proximity between

the two," *Thomas v. City of Beaverton,* 379 F.3d 802, 812 (9th Cir.2004) (internal citation and quotation marks omitted), "[i]t is important to emphasize that it is *causation,* not temporal proximity itself, that is an element of plaintiff's prima facie case." *Porter v. Cal. Dep't of Corrs.,* 383 F.3d 1018, 1030 (9th Cir.2004) (internal citation and quotation marks omitted) (emphasis added). Moreover, "a lack of temporal proximity may make it more difficult to show causation, [but] 'circumstantial evidence of a pattern of antagonism following the protected conduct can also give rise to the inference.'" *Id.* (quoting *Kachmar v. SunGard Data Sys., Inc.,* 109 F.3d 173, 177 (3d Cir.1997) (internal quotation marks omitted)).

The record reveals a history of antagonism between Castillo and her supervisors, including Matarazzo, attributable at least in part to Castillo's complaints about discrimination against her and her testimony at a hearing about a co-worker's discrimination complaint. Castillo presented evidence that one or more of her supervisors labeled her a "troublemaker" on more than one occasion; advised her that it would be in her best interest not to file a complaint when she was not selected for promotion in 1994; and engaged in other forms of adverse treatment, at around the same times as she was engaged in protected activity, including purposefully setting her up to fail at delivering a speech and not selecting her cases to establish precedents. On the current record, looked at most favorably to Castillo, a jury could find that there was a sufficient pattern of complaint-related antagonism to infer that retaliation was a reason she was not selected for the 1999 position, the defendant's contrary ex-

---

4. At the time of Cooper's selection for the GS–13 position in April 1999, the most recent action on one of Castillo's complaints was the 1998 settlement of her 1993 discrimination claim against Ronald Holmes, a former supervisor. In addition, in early 1997, Castillo engaged in correspondence with Marc Wong, Special Assistant to the Vice Chairperson of the EEOC, about discriminatory treatment by Charles Gorham, another former supervisor.

planation notwithstanding. Although Castillo's complaints were not particularly close in time to the 1999 non-selection, there is evidence favorable to Castillo indicating that the EEOC "conditioned the terms of her employment, at least impliedly," *id.,* on her acquiescence to its demands that she not complain about suspected discrimination.

We reverse, therefore, the district court's grant of summary judgment to the defendant on this claim, and remand to the district court for further consideration.

## III. Hostile Work Environment

■ Finally, we affirm the district court's grant of summary judgment as to Castillo's hostile work environment claim. For Castillo "to prevail on a hostile workplace claim premised on either race or sex, [she] must show, [in part, that she] was subjected to verbal or physical conduct of racial or sexual nature." *Gregory v. Widnall,* 153 F.3d 1071, 1074 (9th Cir.1998) (per curiam). Overall, "in order to survive summary judgment, [Castillo] must show the existence of a genuine factual dispute as to ... whether a reasonable [Filipina woman] would find the workplace so objectively and subjectively racially [and/or sexually] hostile as to create an abusive working environment." *McGinest v. GTE Serv. Corp.,* 360 F.3d 1103, 1112 (9th Cir.2004). Castillo has failed to establish a genuine issue of material fact on this point.

Although Castillo devoted the majority of her opening brief to her argument that the district court failed to take account of her long history of poor working conditions at the EEOC, none of her arguments lead to the conclusion that a reasonable jury could find that she suffered from *racial or sexual* harassment. She is correct that the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), dictates that liability for a hostile work environment claim may extend to harassment that occurred before the filing period because such claims are "different in kind from discrete acts." *Id.* at 115. Contrary to Castillo's assertion, however, the defendant is not liable for independently actionable, discrete, adverse employment actions as part of a hostile work environment claim. *Porter,* 383 F.3d at 1027.

A further problem with Castillo's claim is that she has pointed to no evidence that the generally poor working conditions at the San Diego office were in any way premised on *racial or sexual* harassment.[5] The record is replete with evidence that the San Diego office was an unpleasant place to work. There is no indication, however, that Castillo was singled out for poor treatment because of her gender, national origin, or race.

We affirm, therefore, the district court's grant of summary judgment on this claim.

**AFFIRMED in part, REVERSED in part, and REMANDED.**

■

**5.** Our recent decision in *McGinest* does not require a different result. In that case, the background evidence was moored to significant evidence that the alleged harassment was connected to racial bias. The plaintiff presented evidence that he "was subjected to extreme racial insults, as well as more subtle taunts, by supervisors and coworkers. Racist graffiti ... regularly appeared in the bathroom and on equipment, and on one occasion a management-level employee called McGinest 'stupid nigger' to his face." *McGinest,* 360 F.3d at 1115.