**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JOSE OMAR BELLO-REYES,
  *Petitioner-Appellant*,

v.

PETER T. GAYNOR, Acting Secretary of Homeland Security; JONATHAN FAHEY, Senior Official Performing the Duties of the Director; ERIK BONNAR, Field Office Director, San Francisco Field Office; JEFFREY A. ROSEN, Acting Attorney General,
  *Respondents-Appellees*.

No. 19-16441

D.C. No.
3:19-cv-03630-SK

OPINION

Appeal from the United States District Court
for the Northern District of California
Sallie Kim, Magistrate Judge, Presiding

Argued and Submitted November 17, 2020
San Francisco, California

Filed January 14, 2021

Before: Sidney R. Thomas, Chief Judge, and Mary M. Schroeder and Marsha S. Berzon, Circuit Judges.

Opinion by Chief Judge Thomas

## SUMMARY[*]

### Immigration

In a case in which Jose Omar Bello-Reyes filed a petition for a writ of habeas corpus under 8 U.S.C. § 2241, arguing that his immigration arrest and re-detention was retaliation for his protected speech, the panel reversed the district court's denial of the petition and remanded for application of the standard from *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977).

In 2018, Bello was detained by Immigration and Customs Enforcement ("ICE") and released on bond and, in April 2019, he was convicted of driving under the influence. On May 13, 2019, Bello spoke publicly at a rally and read his poem, entitled "Dear America," in which he criticized ICE practices. Less than thirty-six hours later, ICE revoked his bond and re-arrested him. In denying Bello's habeas petition, the magistrate judge relied on *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019), in which the Supreme Court held that the presence of probable cause generally defeats a retaliatory criminal arrest claim under 42 U.S.C. § 1983.

The panel concluded that *Nieves* did not control here. First, the panel explained that problems of causation that may counsel for a no probable cause standard are less acute in the habeas context. Specifically, in § 1983 suits, the plaintiff must identify the official or officials who violated his constitutional rights, but that is not so in habeas. Second, the

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

panel explained that *Nieves* arose out of the criminal context, where evidence of probable cause for arrest will be available in virtually every retaliatory arrest case, but that this reasoning does not translate to the immigration bond revocation context, where probable cause is not necessary, and the decision is completely discretionary.

The panel remanded to the district court to apply the *Mt. Healthy* standard, the default rule for First Amendment retaliation claims. Under *Mt. Healthy*, once a petitioner has made a showing of a retaliation claim, the burden shifts to the government to show that it *would* have taken the same action even in the absence of the protected conduct. The panel explained that the district court applied this standard incorrectly, but that it correctly remarked that the timing of ICE's decision to re-arrest Bello was highly suggestive of retaliatory intent.

---

## COUNSEL

Jordan Wells (argued), Ahilan Arulanantham, Stephanie Padilla, and Michael Kaufman, American Civil Liberties Union Foundation of Southern California, Los Angeles, California; Angélica H. Salceda and Vasudha Talla, American Civil Liberties Union Foundation of Northern California, San Francisco, California; for Petitioner-Appellant.

Michael A. Celone (argued), Senior Litigation Counsel; William C. Silvis, Assistant Director; William C. Peachey, Director; Joseph H. Hunt, Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States

Department of Justice, Washington, D.C.; for Respondents-Appellees.

Michael Risher, Law Office of Michael T. Risher, Berkeley, California; Alina Das, Washington Square Legal Services, New York, New York; Nora Benavidez, Director, U.S. Free Expression Programs, PEN America, New York, New York; for Amicus Curiae PEN America.

## OPINION

THOMAS, Chief Judge:

This case requires us to consider whether the Supreme Court's recent decision in *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019), applies to a noncitizen's claim that Immigration and Customs Enforcement ("ICE") unconstitutionally retaliated against him for his speech when revoking his bond and re-arresting him. Jose Bello-Reyes ("Bello") had been detained by ICE and released on bond in 2018. On May 13, 2019, Bello spoke at a rally and read a poem of his own writing, entitled "Dear America." In this poem, he publicly criticized ICE enforcement and detention practices. Less than thirty-six hours later, ICE revoked his bond and re-arrested him. The Government contends that ICE had probable cause to arrest Bello, and thus his retaliatory arrest argument fails under *Nieves*. *See* 139 S. Ct. at 1727. We agree with Bello, however, that the distinctions between *Nieves* and Bello's habeas petition indicate that *Nieves* should not control in this case. We reverse and remand for the application of the standard from *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

I

In May 2018, Bello was initially arrested by ICE, detained, and issued with a notice to appear ("NTA") charging him as being "present in the United States without admission or parole" and initiating removal proceedings. Bello had been living in California for most of his life after arriving in the United States without documentation in 2000, at age three. He was released from detention on a $10,000 bond secured by community groups in August 2018. After his release, Bello became an outspoken activist, publicly decrying ICE's policy's and practices. His removal proceedings continued, and he applied for cancellation of removal and relief in the form of a U visa.[1]

Bello was arrested for driving under the influence ("DUI") in January 2019. He pleaded nolo contendere and was convicted on April 11, 2019. He was sentenced to five days in jail, which was stayed until May 13, 2019, although he requested it be further delayed due to a work program he was planning on attending.

On May 13, 2019, Bello spoke at a rally protesting Kern County law enforcement's involvement with ICE, a "videotaped, livestreamed, and widely publicized event," and read a poem of his own writing entitled "Dear America." In this poem, he criticized ICE enforcement and immigration

---

[1] U visas are available to victims of certain crimes who assist law enforcement officials "investigating or prosecuting criminal activity," as described in 8 U.S.C. § 1101(a)(15)(U). Bello is awaiting a response to his U visa application; if deemed eligible, he would be granted deferred action and placed on a waiting list, as U visas are capped at 10,000 a year. 8 C.F.R. § 214.14(d)(1).

detention policies, calling on young people to unite against these practices. Less than thirty-six hours later, at 6:30 AM on May 15, 2019, ICE officers arrived at Bello's home and arrested him. ICE had revoked his previous bond, ordered him re-detained, and increased his bond to $50,000.**[2]** ICE possessed a warrant dated May 15, 2019 stating that it had "probable cause to believe that [Bello] is removable from the United States." ICE agents detained Bello in a holding cell at ICE's processing center for several hours prior to his transfer to the detention facility. Agents refused to let him use the bathroom, and he urinated in his clothes while handcuffed. Bello alleges that one agent told him, "We'll see if you can get your friends to raise the bond money again." Once he was transferred to the detention center, a guard approached Bello, asking, "You think you're famous and you're going to get special treatment?"

Bello filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, and the parties consented to proceed before a magistrate judge. Bello argued that his arrest and re-detention was an unconstitutional violation of the First Amendment, since it was retaliation for his protected speech. He argued that the court should apply the *Mt. Healthy* standard to this claim. The Government countered that it had probable cause to arrest Bello, as evidenced by the warrant, and therefore his petition was foreclosed by *Nieves*, in which the Supreme Court held that the presence of probable cause generally defeats a retaliatory criminal arrest claim for damages under 42 U.S.C. § 1983.

---

**[2]** In his habeas petition, Bello argued that the increase of the bond amount violated his due process rights. The district court ruled this claim unexhausted, and Bello has not appealed that determination.

The magistrate judge denied the petition on the ground that *Nieves* controlled and, since ICE had "an objectively reasonable justification for re-arresting . . . and detaining" Bello, his retaliatory arrest claim was unavailing.**[3]** His claim would fail even under the alternate standard from *Mt. Healthy*, the magistrate judge reasoned, because Bello had not "demonstrated definitively that ICE would not have re-arrested him absent his speech."

This timely appeal followed. We review the district court's decision to deny a petition for a writ of habeas corpus de novo. *See Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011). We review the district court's findings of fact for clear error. *See id.* at 1203.

II

Bello argues that his re-arrest and detention constitute an unconstitutional retaliation against his protected speech. "Official reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right,' and the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (alteration in original) (quoting *Crawford-El v. Britton*,

---

**[3]** Bello was released from detention on August 12, 2019 on a bond secured by community groups, to which he contributed. Bello's release on bond does not moot his habeas petition. He remains subject to electronic surveillance and other conditions of release that constitute "strict limitations on [his] freedom," *Rodriguez v. Hayes*, 591 F.3d 1105, 1118 (9th Cir. 2010), and can be re-detained at any time. *See Diouf v. Napolitano*, 634 F.3d 1081, 1084 n.3 (9th Cir. 2011). A "live controversy" remains. *Rodriguez*, 591 F.3d at 1118.

523 U.S. 574, 588 n.10 (1998)). A plaintiff making a First Amendment retaliation claim must allege "that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *Capp v. Cty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (quoting *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016)). The question of what standard to apply to determine whether Bello's speech was a substantial or motivating factor in ICE's decision to revoke his bond forms the crux of our review.[4]

A

We first address whether the Supreme Court's 2019 decision in *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019), controls in Bello's case. We conclude that *Nieves*, a suit for damages brought under 42 U.S.C. § 1983 and arising out of a criminal arrest, should not be extended to Bello's habeas challenge to his bond revocation.

---

[4] The Government's argument that Bello's claim fails under *Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 487 (1999), is inapposite. *AADC* forecloses selective prosecution claims only as to the three actions listed in 8 U.S.C. § 1252(g): the commencement of proceedings, adjudication of cases, or execution of removal orders. *See Catholic Soc. Servs., Inc. v. INS*, 232 F.3d 1139, 1105 (9th Cir. 2000) (en banc) (construing *AADC* to limit § 1252(g)'s scope to "the three specific discretionary actions mentioned in its text, not to all claims relating in any way to deportation proceedings"). Bello challenges none of these actions. To the contrary, he is continuing to participate in his removal proceedings and seeking relief in the form of a U visa. *AADC* does not counsel for a different result. Moreover, to the extent that the government argues that we lack jurisdiction over Bello's claim under 8 U.S.C. § 1252(g), this argument fails for the same reason.

*Nieves* arose out of a § 1983 suit for damages against individual arresting officers. 139 S. Ct. at 1721. The Court had previously held in *Hartman v. Moore*, 547 U.S. 250 (2006), that a plaintiff claiming retaliatory prosecution is required to plead and prove the absence of probable cause supporting the underlying criminal charges. *Id.* at 255–56. In *Nieves*, the Court "adopt[ed] *Hartman*'s no-probable-cause rule in [the] closely related context" of retaliatory arrest. 139 S. Ct. at 1725; *see also Hartman*, 547 U.S. at 265–66. The same rationales for the *Hartman* rule applied in the retaliatory arrest context, the Court reasoned, since both situations involve "causal complexities," *Nieves*, 139 S. Ct. at 1723, and evidence of probable cause would nearly always be available, *id.* at 1724. The Supreme Court rejected the plaintiff's proffered subjective test, concerned that it ran counter to Fourth Amendment principles, *id.* at 1724–25, would set off "broad ranging discovery," and would chill officers' speech because of individual defendants' litigation risk, *id.* at 1725. The Court further noted that common law tort principles confirmed this rule. *Id.* at 1726. Thus, *Nieves* established an objective test in which the presence of probable cause generally defeats a retaliatory criminal arrest claim for damages.

For at least these reasons, in combination, *Nieves* is not applicable here. First, problems of causation that may counsel for a no probable cause standard are less acute in the habeas context. In § 1983 suits, it is necessary to identify the particular state official or officials who violated the plaintiff's constitutional rights. *See* 42 U.S.C. § 1983 (referring to "every *person* who, under color of [law]" violates an individual's rights (emphasis added)). Not so in habeas: the petitioner need not identify a particular violator, only that his confinement is unconstitutional. *See* 28 U.S.C. § 2241(c).

Second, *Nieves* does not apply here because it arose out of the criminal arrest context, where "evidence of the presence or absence of probable cause for the arrest will be available in virtually every retaliatory arrest case." 139 S. Ct. at 1724 (quoting *Reichle v. Howards*, 566 U.S. 658, 668 (2012)). This reasoning does not translate to the immigration bond revocation context. While a probable cause requirement exists for initial immigration arrests, *see* 8 U.S.C. § 1357 (requiring "reasonable grounds to believe" that an individual is present in the United States in violation of the immigration laws for a warrantless arrest); *see also Tejeda-Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980) (observing that the reasonable belief standard is equivalent to probable cause), no equivalent benchmark exists where ICE is revoking bond rather than arresting in the first instance. Instead, the decision is completely discretionary. *See* 8 C.F.R. 236.1(c)(9) ("[R]elease may be revoked at any time in the discretion of the district director . . . ."). Since the *Nieves* rule depended on this objective benchmark of a reasonable arrest, extending it to this situation would effectively eliminate almost any prospect of obtaining release on habeas for actually retaliatory, unconstitutional immigration bond revocation. As long as those authorizing the bond revocation exercised discretion (as opposed to acting automatically or arbitrarily) there could ordinarily be no release on habeas.[5]

---

[5] Bello also challenges whether *Nieves* is applicable to this case for other reasons related to the nature of a §1983 claim. Given this meaningful distinction between *Nieves* and Bello's case, we need not decide on this ground. However, we note that liability under § 1983 is often limited by competing considerations such as questions of immunity, whereas in habeas confinement that violates the constitution warrants the remedy of release. *See* 28 U.S.C. § 2241(c); *Felker v. Turpin*, 518 U.S. 651, 59 & n.2 (describing the "direct ancestor" of 28 U.S.C. § 2241(c), which "authoriz[ed] federal courts to grant the writ . . . 'in all cases where any

We need not define the precise extent of *Nieves*'s applicability in the immigration context here.**[6]** However, we decline to extend a rule this closely dependent on § 1983 case law and the particularities of criminal arrests to Bello's habeas petition. We conclude that *Nieves* does not control in this case.**[7]**

## B

Because *Nieves* does not control, we remand to the district court to apply the *Mt. Healthy* standard, the default rule for First Amendment retaliation claims. *See Nieves*, 139 S. Ct. at 1725 ("[I]f the plaintiff establishes the absence of probable cause, 'then the *Mt. Healthy* test governs . . . .'" (quoting *Lozman v City of Riviera Beach*, 138 S. Ct. 1945, 1952–53 (2018))).

---

person may be restrained of his or her liberty in violation of the [C]onstitution'"). Additionally, no individual officer will be held liable for damages in Bello's habeas case, whereas such litigation risk was a motivating factor for establishing an objective no-probable-cause rule in *Nieves*.

**[6]** We also express doubt as to the extent to which a case motivated by Fourth Amendment concerns in the criminal arrest context should apply to Bello's civil immigration bond revocation. However, given the other meaningful distinctions between *Nieves* and Bello's case, we need not decide on this ground.

**[7]** Because *Nieves* does not control, the presence of probable cause for ICE's revocation of Bello's bond is not dispositive. However, even if *Nieves* did apply, we doubt that it would foreclose Bello's claim. The warrant that the Government alleges establishes probable cause only establishes probable cause for his initial immigration arrest. *See* 8 U.S.C. § 1226(b) (when revoking bond, ICE re-arrests "under the original warrant"). There was no need for ICE to have independent probable cause to revoke Bello's bond. *See* 8 C.F.R. 236.1(c)(9).

Under *Mt. Healthy*, once a petitioner has made a showing of a First Amendment retaliation claim, "the burden shifts to the government to show that it 'would have taken the same action even in the absence of the protected conduct.'" *O'Brien*, 818 F.3d at 932 (quoting *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006)) (citing *Mt. Healthy*, 429 U.S. at 287). The Government "must show more than that they '*could* have' punished the plaintiffs in the absence of the protected speech; instead, 'the burden is on the defendants to show' through evidence that they '*would* have' punished the plaintiffs under those circumstances." *Pinard*, 467 F.3d at 770 (quoting *Settlegoode v. Portland Pub. Schs.*, 371 F.3d 503, 512 (9th Cir. 2004)).

The district court applied this standard incorrectly, ruling that, because Bello had not "demonstrated definitively that ICE would not have re-arrested him absent his speech," his claim failed under *Mt. Healthy*. The correct application of *Mt. Healthy*, by contrast, would first determine whether Bello demonstrated that retaliation for his speech was a motive for revocation of his bond and, if so, then shift the burden to the Government to demonstrate that it "would have taken the same action even in the absence of the protected conduct" and revoked Bello's bond even if he had not publicly decried ICE's practices. *O'Brien*, 818 F.3d at 932 (quoting *Pinard*, 467 F.3d at 770) (citing *Mt. Healthy*, 429 U.S. at 287). We note as to the initial showing that the district court was correct to remark that the "timing of ICE's decision to re-arrest [Bello] is highly suggestive of retaliatory intent." *See also Thomas v. City of Beaverton*, 379 F.3d 802, 812 (9th Cir. 2004) ("The causal link between a protected activity and the alleged retaliatory action can be inferred from timing alone when there is a close proximity between the two." (internal quotation marks omitted) (citations omitted)). We remand to

the district court to apply this burden-shifting standard in the first instance.

**REVERSED AND REMANDED.**